By the Court.
 

 This action in mandamus originating in this court is brought by Herbert B. Mooney, Director of Public Welfare of the state of Ohio, as relator, against Joseph T. Ferguson, Auditor of State, as respondent, to require the latter to issue warrants
 
 *280
 
 for additional pay to four employees in relator’s department who are in the classified civil service of the state.
 

 The case is submitted upon demurrer to the answer and involves principally an interpretation of a part of House Bill No. 227, being the general appropriation act for the years 1943 and 1944, which was passed by the 95th General Assembly, June 11, 1943, and approved by the Governor and filed in the office of the Secretary of State on June 24, 1943.
 

 At issue herein is that portion of the act which distributes a designated sum annually for the purpose of making salary and. wage adjustments to state employees. Under the heading “Salary and "Wage Adjustment” it is prescribed:
 

 “The foregoing appropriation shall be distributed to the various offices, departments, boards and commissions to which appropriations are herein made for salaries and wages *' * *. Such distribution shall be made on order of the controlling board and the amounts distributed shall be used only to augment the items within ‘personal service’ and ‘maintenance’ to the end that said items will be sufficient for the year 1943 and for the year 1944 to permit an increase of 10% in all salaries and wages of less than $2,000 annually. Upon such distribution by order of the controlling board, the salaries and wages of all employees, within such offices, departments, boards and commissions, which are now less than $2,000 annually, shall be increased 10% unless such increase of 10% would result in a salary or wage in excess of $2,000 annually, in which event such salary or wage shall be increased only to the sum of $2,000 annually.
 

 “Provided, however, upon request of the heads of the various offices, departments, boards and commissions, and with the approval of the controlling board, all employees receiving more than $1,800 per annum
 
 *281
 
 may be given a temporary increase for the years 1943 and 1944 of not to exceed $180 per annum. The controlling board may authorize all or a portion of such temporary increase applying to employees receiving $3,000 per annum or less, to be paid from the foregoing salary and wage adjustment appropriation to the extent appropriations for ‘personal service’ and ‘maintenance’ are not sufficient for such purpose. The increase herein authorized shall not apply to the members of boards serving part time on a per diem basis.
 

 “The temporary increases in compensation herein authorized shall not be paid to former employees who are not in the service of the state upon the date this act is filed in the office of the Secretary of State, except where those employees have left the employ of the state to serve in any branch of the armed forces of the United States.”
 

 In his petition the relator alleges in substance:
 

 (1) That Janette Faulkner was employed by him. on April 1,1943, at a basic salary of $51 per month for a period of three months, $54.50 per month for the next three months, $58 per month for the next three months, $60.50 per month for the next three months and $61.50 per month thereafter, and that, by virtue of the above provisions of House Bill No. 227, Janette Faulkner, in addition to her basic salary of $54.50 for the month of July, 1943, is entitled to an increase of ten per cent thereof during such month.
 

 (2) That Eva M. Young, a typist, who was. on June 24, 1943, and for some time prior thereto, employed in the Department of Public Welfare under the civil service classification “Typist, Grade I-A” at a ■basic salary of $1,380 per annum, was, on September 1, 1943, promoted to clerk under the classification “Clerk, Grade I-D” having a basic salary of $1,560 per annum and, in addition to her basic salary of $65 for the first 15 days of September, is, by reason of
 
 *282
 
 House Bill No. 227, entitled to an inci’ease of ten per cent thereof.
 

 (3) That Thomas Hargis was hired as a male attendant at the Columbus State Hospital on the 5th day of July, 1943, at a basic salary of $57 per month and, in addition to his basic salary of $49.60 for 27 days of the month of July, is, by reason of said House Bill No. 227, entitled to an additional sum amounting to ten per cent thereof.
 

 (4) That Dr. Charles E. Hamnér was duly appointed as an assistant physician at the Columbus State Hospital on the 12th day of July, 1943, at a basic salary of $216.66 per month plus maintenance and, at the request of relator, with the approval of the controlling board, was granted a temporary increase in salary in the amount of $180 pe.r annum during the ■years 1943 and 1944 and, by reason thereof, is entitled not only to his basic salary for the 20 days of July that he was employed, but, in addition thereto, is entitled to a like proportion of the $15 per month temporary salary increase.
 

 Answering, the respondent avers “that neither under House Bill No. 227 of the 95th General Assembly nor under any other statute is this defendant [respondent] empowered to draw and issue warrants in payment of temporary salary increases which are in excess of ten per cent of that salary which an employee was receiving on the 24th day of June, 1943, and that neither under such act nor any other law is the defendant authorized to draw warrants in any amount exceeding the fixed basic salary of a person employed by the state subsequent to the 24th day of June, 1943.”
 

 It is not disputed that the four employees in question were regularly employed and performed duties as alleged in the petition; that sufficient funds have been appropriated and are available for the payment of the wage and salary claims for which the writ of man
 
 *283
 
 damus is sought; and that vouchers, proper in form and duly approved, were presented to the respondent for the issuance of warrants.
 

 In support of his demurrer to the answer, the relator contends, as set forth in his brief:
 

 First, that the effect of House Bill No. 227 is to increase the compensation of all positions or jobs in the classified civil service of the state, which on June 24, 3 943, were on a basis not exceeding $2,000 per year, by ten per cent of the compensation otherwise fixed by law during the years 1943 and 1944.
 

 Second, that House Bill No. 227 authorizes the appointing officer to increase the compensation during the years 1943 and 1944 of
 
 all
 
 employees employed in positions wherein the compensation is otherwise fixed by law at more than $1,800 per year, by an amount of not over $180 per year.
 

 Third, that House Bill No. 227 requires that the compensation of all employees in positions or jobs of the same classification shall receive the same salaries or wages.
 

 Opposing the above contentions, the respondent takes the position:
 

 First, that the amount of salary increase to which a state employee regularly receiving less than $2,000 per year is entitled under House Bill No. 227 is ten per cent of the annual salary or wage such employee was receiving on June 24, 1943.
 

 Second, that the increase in pay provided by House Bill No. 227 applies only to those persons who were in the employ of the state on June 24, 1943.
 

 Applying the law specifically, the respondent asserts that, since the basic salary of Janette Faulkner was at the rate of $51 per month on June 24, 1943, she is entitled to a temporary increase of ten per cent of that amount, and no more; that, since the basic salary of Eva M. Young, on June 24, 1943, was $1,380 a year,
 
 *284
 
 she is entitled to an increase of ten per cent of that amount, and no more; and that, since neither Thomas Hargis nor Dr. Charles E. Hamner were in the employ of the state on June 24, 1943, they are entitled to no increase in salary over their basic pay.
 

 A disposition of the pending controversy, in our opinion, depends largely upon the interpretation of the last sentence of the first paragraph of the salary and wage adjustment provisions of .House Bill No. 227, reading:
 

 “Upon such distribution by order of the controlling board; the salaries and wages of all employees, within such offices, departments, boards and commissions, which are now less than $2,000 annually, shall be increased 10% unless such increase of 10% would result in a salary or wage in excess of $2,000 annually, in which event such salary or wage’ shall be increased only to the, sum of $2,000 annually. ’ ’
 

 In perusing this sentence it will be noticed that it embraces “all employees” — those in the classified civil service whose salaries or wages are established by law, as well as those in the unclassified service whose .salaries or wages are not so established. And the ten per cent increase is in the individual salaries which are now— presently — less than $2,000 annually.
 

 The use of the word “now” in the part of House Bill No. 227 last quoted is significant and denotes an intention on the part of the General Assembly to increase the salaries or wages in effect on June 24, 1943.
 

 Much of the argument of the relator is built upon the words appearing in both Section 2255, General Code, and in House Bill No. 227, that “the compensation of all employees in the classified civil service of the state shall be uniform for positions within the same service, group and grade as established by the classifi
 
 *285
 
 cations of said service as at any time made by tbe rules-of tbe State Civil Service Commission.”
 

 Attention is again called to the fact that temporary increases in pay are accorded all state employees drawing less than the specified amount, many of whom are not in the classified service and therefore receive compensation as fixed by the authority appointing them.
 

 Of course House Bill No. 227 must be read in the light, of the salary and wage adjustment provisions thereof,, and all parts of the act harmonized if possible. That, part requiring uniformity of pay for employees holding-like positions in the classified service is met as to all appointments to such service made subsequent to June-24, 1943. In other words, all employees appointed after that date will receive as their compensation the-salaries specified in the act.
 

 Besides, the ten per cent increase is temporary in nature and does not interfere with established basic wages or salaries of employees in the classified service.
 

 The claim of the respondent that the General Assembly did not intend that those persons entering the employ of the state subsequent to June 24, 1943, should benefit by the ten per cent increase is fortified by the provision contained in the next to the last paragraph of the salary and wage adjustment provisions of the act,, which recites:
 

 “The temporary increases in compensation herein-authorized shall not be paid to former employees who-are not in the service of the state upon the date this act is filed in the office of the Secretary of State, except where those employees have left the employ of the state-to serve in any branch of the armed forces of the-United States.”
 

 It would seem anomalous indeed that former employees of the state who re-entered state employment after June 24, 1943, would not be entitled to the in
 
 *286
 
 crease, while those who had never worked for the state and who entered its employment, subsequent to June 24th would be entitled to the increase.
 

 In attempting to discover the purpose and intent of the General Assembly in providing temporary salary and wage increases for the years 1943 and 1944, we must look to the language actually employed in the act. To adopt the interpretation urged by the relator it is necessary to supply language which the legislative body did not see fit to use. Had it been the intention to grant a general ten per cent increase, without restrictions, it might readily have been done by an expression such as:
 

 “All annual salaries fixed herein which are less than $2,000 shall for the years 1943 and 1944 be increased 10% unless such 10%'increase would result in a salary of more than $2,000 annually, in which event such salary shall for the two years specified be increased only to the sum of $2,000 annually.”
 

 We conclude that the respondent’s position must be sustained. Consequently, the relator’s demurrer to the answer is overruled and, both parties agreeing that such ruling is dispositive of the case, the writ will be denied.
 

 Writ denied.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Bell and Williams, JJ., concur.